IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**HI LIMITED PARTNERSHIP,** a Florida
Limited Partnership, and **HOOTERS OF
AMERICA, INC.,** a Georgia Corporation,

     Plaintiffs,

v.

**WINGHOUSE OF FLORIDA, INC.,** a Florida
Corporation, **WINGHOUSE OF KISSIMMEE,
LLC.,** a Florida Limited Liability Company,
**KER, INC.,** a Florida Corporation, **WINGHOUSE
OF ORLANDO, INC.,** a Florida Corporation,
**WINGHOUSE IX, INC.,** a Florida Corporation,
**WINGHOUSE XI, LLC,** a Florida Limited
Liability Company, **WINGHOUSE XII, LLC,**
a Florida Limited Liability Company,

     Defendants.

CIVIL ACTION NO.
6:03-CV-116-ORL-22-JGC

**JURY TRIAL DEMANDED**

_____/

## THIRD AMENDED COMPLAINT

For their complaint in the above-styled action, Plaintiffs HI LIMITED
PARTNERSHIP, a Florida Limited Partnership and HOOTERS OF AMERICA, INC., a
Florida corporation hereby shows this Honorable Court as follows:

## INTRODUCTION

1.

By this suit, HI LıMITED PARTNERSHIP and HOOTERS OF AMERICA, INC.
seek relief for trade dress infringement, unfair competition under the common law and
the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") by defendants

WINGHOUSE OF FLORIDA, INC., WINGHOUSE OF KISSIMMEE, LLC, KER, INC., WINGHOUSE OF ORLANDO, INC., WINGHOUSE IX, INC., WINGHOUSE XI, LLC, and WINGHOUSE XII, LLC.   As alleged in more detail in this complaint, defendants have engaged and are continuing to engage in a conscious, intentional, and systematic pattern of trade dress infringement and dilution to the damage of HI LIMITED PARTNERSHIP and HOOTERS OF AMERICA, INC. and to the confusion of the public, including innumerable customers of HI LIMITED PARTNERSHIP and HOOTERS OF AMERICA, INC.   HI LIMITED PARTNERSHIP and HOOTERS OF AMERICA, INC. seek damages and injunctive relief to remedy the substantial trade dress infringement, trade dress dilution and unfair competition by defendant.

## THE PARTIES

### 2.

HI LIMITED PARTNERSHIP ("HI") is a Limited Partnership duly organized and existing under the laws of Florida, with its principal place of business located at 1815 The Exchange, Atlanta, Georgia  30339, Cobb County, Georgia and a Florida registered agent address of 1201 Hays Street, Tallahassee, Leon County, Florida 32301-2525 c/o Corporation Service Company.

### 3.

HOOTERS OF AMERICA, INC. ("HOA") is a corporation duly organized and existing under the laws of Georgia, with its principal place of business located at 1815 The Exchange, Atlanta, Georgia 30339, Cobb County, Georgia and a Florida registered

agent address of 1200 S. Pine Island Road, Plantation, Broward County, Florida 33324, c/o CT Corporation System.

4.

HI LIMITED PARTNERSHIP and HOOTERS OF AMERICA, INC. may be collectively referred to hereinafter in this Complaint as "the HOOTERS PARTIES" or "HOOTERS".

5.

Defendant WINGHOUSE OF FLORIDA, INC. is a corporation duly organized and existing under the laws of Florida, with its principal place of business located at 7421 Ulmerton Road, Largo, Florida 33771. Defendant may be served through its registered agent for service of process: Crawford Ker at 7421 Ulmerton Rd., Largo, Florida 33771.

6.

Defendant WINGHOUSE OF KISSIMMEE, LLC is a limited liability company duly organized and existing under the laws of Florida, with its principal place of business located at 7421 Ulmerton Road, Suite 104, Largo, Florida 33771. WINGHOUSE OF KISSIMMEE, LLC owns and operates a WINGHOUSE restaurant located at 3405 West Vine Street, Kissimmee, FL 34741. Defendant may be served through its registered agent for service of process: R. Alan Higbee, Fowler, White, Gillen, Boggs, Banker at 501 E. Kennedy Blvd., Suite 1700, Tampa, Florida 33660-2.

7.

Defendant KER, INC. is a corporation duly organized and existing under the laws of Florida, with its principal place of business located at 7421 Ulmerton Road, Suite 104,

Largo, Florida 33771. Defendant may be served through its registered agent for service of process: Crawford Ker at 7421 Ulmerton Rd., Largo, Florida 33771.

8.

Defendant WINGHOUSE OF ORLANDO, INC. is a corporation duly organized and existing under the laws of Florida with its principal place of business located at 3201 Parkway Center Court, Orlando, Florida 32808-1039. Defendant may be served through its registered agent for service of process: Crawford Ker at 7421 Ulmerton Road, Largo Florida 33771.

9.

Defendant WINGHOUSE IX, INC. is a corporation duly organized and existing under the laws of Florida with its principal place of business located at 7421 Ulmerton Road, Largo Florida 33771. Defendant may be served through its registered agent for service of process: R. Alan Higbee at Fowler, White, Gillen, Boggs Villareal and Banker, P.A. at 501 E. Kennedy Boulevard, Suite 1700, Tampa, Florida 33602.

10.

Defendant WINGHOUSE XI, LLC is a limited liability company duly organized and existing under the laws of Florida with its principal place of business located at 7421 Ulmerton Road, Largo Florida 33771. Defendant may be served through its registered agent for service of process: R. Alan Higbee at Fowler, White, Gillen, Boggs Villareal and Banker, P.A. at 501 E. Kennedy Boulevard, Suite 1700, Tampa, Florida 33602.

4

11.

Defendant WINGHOUSE XII, LLC is a limited liability company duly organized and existing under the laws of Florida with its principal place of business located at 7421 Ulmerton Road, Largo Florida 33771. Defendant may be served through its registered agent for service of process: R. Alan Higbee at Fowler, White, Gillen, Boggs Villareal and Banker, P.A. at 501 E. Kennedy Boulevard, Suite 1700, Tampa, Florida 33602.

## JURISDICTION AND VENUE

12.

This is an action for trade dress infringement under the Lanham Act § 43(a), 15 U.S.C.A. § 1125(a), *i.e.*, false designation of origin, false or misleading description of fact, or false or misleading representation of fact, 15 U.S.C.A. § 1125(c), *i.e.*, dilution of famous marks, and for unfair competition under the common law and Florida Deceptive and Unfair Trade Practices Act, Fla Stat. § 501.201, *et. seq.*

13.

This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121(a), in that this action arises in part under 15 U.S.C. §§ 1114 and 1125(a), and (c). This court has pendent jurisdiction over the state law claims as they arise out of the same transaction or occurrence.

14.

Personal jurisdiction exists over the defendants, as each is a company domiciled in the state of Florida.

15.

Venue is appropriate in this district because defendants, pursuant to 28 U.S.C. § 1391, operate, manage or license restaurants in this judicial district and the claims complained of in this Complaint arose in this district.

## FACTS COMMON TO ALL COUNTS

### Plaintiffs' Business and Philosophy

16.

HOOTERS OF AMERICA, INC. ("HOA") is the Atlanta, Georgia based operator and franchisor of over 310 HOOTERS restaurants in 43 states and numerous countries. HOA owns and franchises in the State of Florida.  HOA is the exclusive licensee of certain intellectual property owned by HI LIMITED PARTNERSHIP ("HILP")

17.

HILP is the owner of certain rights in intellectual property that it licenses exclusively to HOA that are the subject of this Complaint.

18.

"HOOTERS" restaurants are nationally known and widely recognized by restaurant consumers.  HOOTERS' restaurant operations and the services it renders under the HOOTERS name and distinctive trade dress are of the highest quality, and are recognized by the consuming public as being of the highest quality.

19.

HOOTERS' services and goods are marketed and promoted through the unique and distinctive trade dress that HOOTERS has established through years of successful

operation of its HOOTERS restaurants. Substantial amounts of money have been spent in establishing the affiliation of HOOTERS restaurants with this distinctive trade dress with the intention that customers will identify a restaurant as being a HOOTERS restaurant as opposed to a competitor's restaurant. HOOTERS has been successful in creating this connection such that consumers recognize the distinctive trade dress of a HOOTERS restaurant as representing a restaurant as one associated with HOA and its franchisees and the quality services and goods that are offered by HOA and its franchisees through said restaurants. Part of the success of the HOOTERS restaurants is dependent upon and derived from its unique and distinctive atmosphere and presentation.

## Plaintiffs' Inherently Distinctive Trade Dress

### 20.

HOOTERS was founded in 1983 and the first HOOTERS restaurant was opened in Clearwater, Florida. The goal of the founder(s) was to provide a neighborhood establishment with a distinctive concept stressing great food, great service, and a distinguishing atmosphere, which includes the now famous "Hooters Girls". This concept has become known as the "HOOTERS concept".

### 21.

From its inception, the HOOTERS concept and atmosphere has sought to attract its customer base by providing a unique customer experience. The atmosphere in HOOTERS restaurants is accurately described by its slogan "delightfully tacky, yet unrefined". This atmosphere promotes entertainment and interest for its customers, all done with an eye toward principles of good food and fun. HOOTERS' dedication to

maintaining this concept and its related atmosphere, including the implementation of the concept, has created a business that is unique and has set it apart from other restaurant establishments. HOOTERS' franchisees agree to become a franchisee of the HOOTERS concept in order to benefit from the HOOTERS concept and implementation, which HOA's franchisees view as providing a fundamentally competitive edge in the restaurant business.

22.

Beginning with its first HOOTERS store, and continuing with each successive opening, HOA and its franchisees have developed an inherently distinctive trade dress for the presentation and sale of goods and services at HOOTERS restaurants. This trade dress consisted of, among other things, a unique restaurant environment, which includes displays theretofore not utilized by any other restaurant company, a philosophy of stressing fun in the dining experience, whereby customers routinely interact with the "Hooters Girls" to enhance their dining experience, a sales area also acting as a sales fixture, where a unique assortment and presentation of merchandise promoting HOOTERS establishments are sold, and the display of audio and video offerings comprised of sports themes.

23.

HOOTERS is also distinguished by its unconventional approach to the restaurant business that was pioneered by the founder(s) and is contrary to traditional restaurant management. HOOTERS' restaurants focus on the atmosphere as much as the food. Its theme features an unusual and unique merchandise mix consisting of the use of sex

8

appeal in the dining experience. Combining all of these disparate products in one contemporarily designed restaurant setting, with the unifying theme of a "delightfully tacky, yet unrefined" atmosphere, and a design catering to male consumers was a groundbreaking step in the retail industry.

24.

A further innovation and feature of HOOTERS' restaurants is the visual presentation and ambiance of the stores. HOOTERS restaurants use an overall interactive experience with its servers as compared to traditional retail settings, evoking the feel of a social setting. Each HOOTERS restaurant features, sports on television, and a menu that includes seafood, sandwiches, salads and spicy chicken wings. More particularly, the layout and presentation of each HOOTERS restaurant by HOA and its franchisees is inherently distinctive and is characterized by design elements that distinguish them from their competitors. Some of these distinctive design elements include the use of distinctive Western Cedar wood on the interior walls, menus printed on parchment paper, plates made of wood weave, use of Christmas lights as interior and exterior décor, and pictures of celebrities in wooden frames on the interior walls. These elements, both individually and taken as a whole, along with the other elements set forth in other paragraphs of this Complaint, combine to form HOOTERS' distinctive trade dress.

25.

A further innovation and feature of HOOTERS' restaurants is their relaxed environment, in which customers are encouraged to interact with the famous "Hooters

Girls". A HOOTERS restaurant provides an extraordinarily tactile environment that is pleasing and memorable, and that is highly unusual in a retail restaurant setting.

26.

Hooters also markets and promotes its restaurants through its employees, including the now-famous "Hooters Girls," who are promoted through special events, calendar and poster sales, as well as on the HOOTERS website. The "nearly world famous" Hooters Girls are the cornerstone of the HOOTERS concept, and as part of their job, make promotional and charitable appearances in their respective communities. The "Hooters Girls" wear distinctive server uniforms consisting of orange Dolphin Brand shorts and a white tank top, short-sleeve, or long-sleeve T-shirt, or in some cases on "Formal Fridays", black shorts with a black T-shirt, which are distinctive in appearance and widely recognizable. The "Hooters Girls" add an element of female sex appeal that is prevalent in the HOOTERS restaurants and is unique in the industry.

27.

During its history, the HOOTERS concept has undergone very little change. The current logo, uniform, menu and ambiance are all very similar to what existed in the original store. This lack of change is understandable given the tremendous success the HOOTERS concept has enjoyed. As the result of long use and extensive advertising and promotion of this concept and its distinctive atmosphere, HOOTERS restaurants have become well and favorably known throughout the United States and the world. HOA and its franchisees have invested substantial amounts of money in advertising and promoting its concept as unique and distinctive. These advertising expenditures by HOOTERS

promote public recognition of the goods sold and services rendered under the "HOOTERS" marks and the high quality of those goods and services. An integral part of the consuming public's recognition of the HOOTERS marks with the restaurants is the distinctive atmosphere that is associated with the HOOTERS restaurants and trade name.

28.

HOOTERS' unique and distinctive trade dress is regularly enhanced by new and distinctive product offerings and promotions. The unique combination of the above elements has resulted in a distinctive, non-functional trade dress that consumers identify with HOOTERS. The HOOTERS trade dress has also acquired secondary meaning among the relevant trade and public as a symbol identifying HOOTERS and the source of its goods and services.

29.

HOOTERS is informed and believes, and based on such information and belief alleges, that since long prior to any acts of the defendants complained of in this complaint, and by virtue of the foregoing widespread use, promotion and recognition of the HOOTERS restaurants, HOOTERS restaurants acquired a valuable commercial magnetism, a distinctiveness and secondary meaning signifying the HOOTERS restaurant system, and the goods and services provided by HOOTERS. HOOTERS' distinctive trade dress is famous, symbolizing HOOTERS and its goods, services, trade dress and marketing. HOOTERS' interior restaurant design and decor, menu, and style of service are source-distinguishing elements that comprise a protectable trade dress. These

individual elements of HOOTERS' trade dress, taken as a whole, create a distinctive visual impression that is nonfunctional.

## Defendants' Business

30.

Defendants WINGHOUSE OF FLORIDA, INC. and KER, INC. are the owners, licensors, or managers of a chain of "Wing House" restaurants. These restaurants use design elements remarkably similar to that of the HOOTERS trade dress.

31.

WINGHOUSE OF FLORIDA, INC. and KER, INC. opened their first restaurant in 1994 in Largo, Florida. This restaurant is in close geographical proximity to the location of the first "HOOTERS" restaurant in Clearwater, Florida. After this time, WINGHOUSE OF FLORIDA, INC. and KER, INC. has continued to expand its chain of restaurants, opening each in close proximity to the locations of other "HOOTERS" restaurants.

32.

Upon information and belief, defendant WINGHOUSE OF FLORIDA, INC. and KER, INC. currently have twelve (12) stores in Florida.

33.

Upon information and belief, defendant WINGHOUSE OF KISSIMMEE, LLC owns, operates or manages a "Wing House" restaurant located at 3405 W. Vine St., Kissimmee, Florida 34741.

34.

Upon information and belief, defendant WINGHOUSE OF ORLANDO, INC. owns, operates or manages a "Wing House" restaurant located at 3201 Parkway Center Court, Orlando, Florida 32808.

35.

Upon information and belief, defendant WINGHOUSE IX, INC. owns, operates or manages a "Wing House" restaurant located at 227 South Semoran Blvd., Winter Park, Florida 32792.

36.

Upon information and belief, defendant WINGHOUSE XI, LLC owns, operates or manages a "Wing House" restaurant located at 2721 West International Speedway Blvd., Daytona Beach, Florida 32114.

37.

Upon information and belief, defendant WINGHOUSE XII, LLC owns, operates or manages a "Wing House" restaurant located at 245 West State Road, 436, Altamonte Springs, Florida, 32714.

### Trade Dress Infringement by Defendants.

38.

On information and belief, Defendants are engaging in a systematic pattern of intentional trade dress infringement of HOOTERS' trade dress.

39.

Defendants portray their restaurants as being extremely similar to HOOTERS'
restaurants. Upon information and belief, Defendants specifically identify and target
HOOTERS as their primary competitor.

40.

The food assortment offered by Defendants is substantially identical to the food
offered by HOOTERS long before defendants began business. Moreover, Defendants'
store design, menu design, and general décor are substantially similar if not identical to
that offered by HOOTERS.

41.

Defendants have had actual knowledge of HOOTERS, its products, reputation,
trading style, trade dress, service marks, trademarks, and trade name since prior to
Defendants opening their first store.

42.

Subsequent to HOOTERS' first use of its distinctive trade dress in the United
States, and subsequent to HOOTERS' acquisition of secondary meaning in its trade dress,
Defendants adopted and began to use a trade dress substantially and confusingly similar
to HOOTERS' trade dress in connection with specialty restaurant services directly
competitive with the specialty restaurant services of HOOTERS.

43.

On information and belief, substantial elements of HOOTERS' store environment
and trade dress were misappropriated by Defendants.

44.

On information and belief, Defendants have copied nearly every aspect of the HOOTERS restaurant business and concept with the intention and purpose of trading on the valuable good will associated with HOOTERS and its distinctive trade dress, which HOA and its franchisees have licensed and should be able to benefit from without competition from unlicensed and unauthorized use of said good will by Defendants. Defendants have adopted a confusingly similar restaurant décor. Defendants have replicated HOOTERS' unique menu and food offerings, including offering substantially all of the same products. Defendant has replicated in substantial detail the unique and distinctive visual presentation and ambiance of the HOOTERS restaurants, including architectural features, spatial interrelationships and fixturing, all of which are nonfunctional. There are many ways Defendants could have created a restaurant without copying the particulars of HOOTERS, but it chose not to do so. Over time, Defendants' copying of HOOTERS trade dress has become increasingly aggressive and confusingly similar to that of HOOTERS.

45.

Defendants have engaged in a practice of duplicating the innovations and changes of the HOOTERS concept, including special product presentations and promotions, and including servers dressed substantially identically as "Hooters Girls" with the exception that Defendants refer to their servers as "Winghouse Girls". Defendants feature a "Winghouse Girl" of the Month and, just like HOOTERS, offer a "Winghouse Girl" calendar, which in form and substance is substantially similar to the "Hooters Girl"

15

calendar offered by HOOTERS. Moreover, defendants generally use the same décor and atmosphere to attract customer interest and draw customers into the restaurant.

### Customer and Other Confusion

#### 46.

The above-described trade dress infringement has caused substantial customer confusion and confusion to the public in that customers who frequent HOOTERS' restaurants are confused concerning whether defendants' restaurants originate with or are rendered by or in affiliation with, or under license from, or with the approval of, HOOTERS. Such confusion is not only damaging to the good will and reputation of HOOTERS, but is injurious to the consuming public as well.

### COUNT I -- FALSE REPRESENTATIONS AND FALSE DESIGNATION OF ORIGIN 15 U.S.C. § 1125(a) (TRADE DRESS INFRINGEMENT)

#### 47.

HOOTERS realleges and incorporates by reference the allegation of Paragraphs 1 through 46, inclusive, and the acts of the defendants asserted in those paragraphs, as if here set forth in full as part of this Count I.

#### 48.

Defendants' acts averred above constitute false designations of origin, false and misleading descriptions, and false and misleading representations, which are likely to cause confusion, mistake, or deception and misrepresent the nature, characteristics, and qualities of HOOTERS services and goods in violation of 15 U.S.C. § 1125(a).

49.

HOOTERS' customers identify its distinctive trade dress with HOOTERS restaurants. HOOTERS' trade dress is distinctive and non-functional and has also acquired secondary meaning among the relevant trade and public as a symbol identifying HOOTERS and the source of its goods and services. Defendants' services and goods are advertised and promoted in the same channels of trade and are directed to the same consumers as HOOTERS' services and goods. Defendants have infringed on the rights of HOOTERS by rendering services using trade dress that is unauthorized and is also confusingly similar to the distinctive trade dress used by HOOTERS in rendering substantially identical services.

50.

Defendants' advertisement, promotion, and rendering of services using trade dress that imitates or simulates HOOTERS' distinctive trade dress falsely represents to consumers that its services originate with HOOTERS or that HOOTERS and defendants are affiliated or have common sponsorship.

51.

Defendants' use of infringing trade dress that imitates or simulates HOOTERS distinctive trade dress has in the past and will continue to cause confusion, mistake or deception among the public.

52.

Defendants' trade dress as set forth above is likely to cause members of the public mistakenly to believe that defendants' services originate with or are rendered by or in affiliation with, or under license from, or with the approval of, HOOTERS.

53.

Defendants' use of confusingly similar trade dress is likely to and does permit defendant to misappropriate and unfairly trade on the valuable good will and reputation of HOOTERS and will subject that good will and reputation in HOOTERS' distinctive trade dress to the hazards and perils attendant upon Defendants' business activities, over which HOOTERS has no control.

54.

HOOTERS is informed and believes, and based on that information and belief alleges, that Defendants with actual knowledge of the public's identification of HOOTERS' trade dress with HOOTERS and its goods and services, intentionally began use of the confusingly similar trade dress with an eye to misleading and deceiving the public into believing that Defendants' goods and services, which are substantially identical to HOOTERS' goods and services, are affiliated with or sponsored or approved by HOOTERS.

55.

The misappropriation and misuse by Defendants of the HOOTERS distinctive trade dress is a false designation of origin as to the goods and services made available by Defendants in interstate commerce. Consumers who use defendants' services and goods,

hear about or read advertisements for the services and goods are led to believe that the services and goods associated with defendants originate with HOOTERS or are sponsored by or affiliated with HOOTERS whereas, in fact, Defendants have no valid connection whatsoever with HOOTERS and whereas, in fact, HOOTERS has no responsibility for, nor control over, the acts of Defendants or the quality of the goods sold and services rendered by Defendants.

56.

HOOTERS is informed and believes, and based on such information and belief alleges, that Defendants' acts as alleged above are likely to cause, have caused and are now causing widespread confusion, mistake, and deception in the public mind, and that many persons believe and are likely to believe that defendants' goods and services are rendered by HOOTERS or are sponsored, approved, endorsed or in some way legitimately connected with HOOTERS.

57.

Defendants are unfairly competing with HOOTERS by adopting the infringing trade dress to identify its goods and services, the intent and result of which has been, and continues to be, a palming off of Defendants' goods and services as emanating from or being endorsed by HOOTERS, causing confusion, mistake, or deception among the public as to the source or origin of such goods and services.

58.

Defendants' use of infringing trade dress has caused and, unless restrained, will continue to cause injury to HOOTERS' by hurting the distinctiveness of the goods and services offered by HOOTERS and its ability to distinguish itself in the marketplace.

59.

On information and belief, such acts of Defendants have been knowingly committed with the intention and purpose of deceiving the public into believing that defendants and HOOTERS are one and the same or that Defendants are affiliated with, sponsored by or otherwise under common control with HOOTERS, and with the further intent of inducing the public into utilizing Defendants' services believing the same to be carried out by or sponsored by HOOTERS or someone under HOOTERS' control.

60.

HOOTERS is informed and believes, and based on that information and belief alleges, that the tortious acts of Defendants complained of in this complaint have been committed willfully and with full knowledge of HOOTERS' rights and with the intention of deceiving and misleading the public at large, and that Defendants are wrongfully trading on the good will and reputation of HOOTERS.

61.

By its wrongful acts, Defendants have caused and, unless restrained by this court, will continue to cause serious irreparable injury and damage to HOOTERS and to the good will associated with trade dress at issue in this district and elsewhere in an amount

to be determined at trial. Such acts of Defendants have caused and will continue to cause irreparable injury to the public as well. HOOTERS has no adequate remedy at law.

**WHEREFORE**, HI LIMITED PARTNERSHIP and HOOTERS OF AMERICA, INC. respectfully pray and demand the following relief be granted under Count I of the Complaint:

1.     That Defendants, their officers, agents, co-conspirators, servants, affiliates, employees, parent and subsidiary corporations, attorneys, and representatives, and all those in privity or acting in concert with defendants, and each and all of them, be permanently enjoined and restrained from directly or indirectly:

(a)     Using trade dress in connection with the advertisement, promotion, offering or rendering of restaurant services that imitate or simulate HOOTERS' trade dress;

(b)     Performing any actions or using any trade dress, styles, titles, or designs that are likely to cause confusion or mistake, or to deceive; or to otherwise mislead the trade or public into believing that HOOTERS and defendants are one and the same or in some way connected; or that HOOTERS is a sponsor of defendants; or that defendants are in some manner affiliated or associated with or under the supervision or control of HOOTERS; or that the goods of defendants originate with HOOTERS; or are likely in any way to lead the trade or the public to associate defendants with HOOTERS;

    (c)      Using any trade dress or engaging in any other conduct that creates a likelihood of injury to the distinctiveness of the goods and services offered by HOOTERS and its ability to distinguish itself in the marketplace or a likelihood of misappropriation of HOOTERS' distinctive trade dress and the good will associated therewith;

    (d)      Using any trade practices whatsoever, including those complained of in this complaint, that tend to unfairly compete with or injure HOOTERS, its business, and the good will appertaining thereto;

    2.      That Defendants be required to pay to HOOTERS compensatory damages in an amount to be determined at trial for the injuries sustained by HOOTERS in consequence of the acts here complained of according to such proof as HOOTERS shall produce at the trial of this action, and that such damages be trebled because of the willful acts described herein in disregard of HOOTERS' known rights;

    3.      That Defendants be required to account to HOOTERS for any and all gains, profits and advantages derived by them from the activities complained of in this complaint;

    4.      That Defendants be required to pay to HOOTERS all of its litigation expenses, including reasonable attorney fees and the costs of this action; and

    5.      That HOOTERS have such other and further relief as the court may deem just and proper.

## COUNT II – <u>DILUTION OF FAMOUS MARKS 15 U.S.C. § 1125(a) (TRADE DRESS DILUTION)</u>

### 62.

HOOTERS realleges and incorporates by reference the allegation of Paragraphs 1 through 46, inclusive, and the acts of the defendants asserted in those paragraphs, as if here set forth in full as part of this Count II.

### 63.

HOOTERS' customers identify its distinctive and famous trade dress with HOOTERS restaurants.

### 64.

Defendants' acts averred above constitute dilution of HOOTERS famous trade dress therefore lessening the capacity of HOOTERS trade dress to identify and distinguish HOOTERS' goods and services in violation of 15 U.S.C. § 1125(c).

### 65.

HOOTERS' trade dress is famous.

### 66.

Defendants are commercially using HOOTERS' famous trade dress in connection with the management and operation of Winghouse restaurants.

### 67.

Defendants' use of HOOTERS' famous trade dress began after the HOOTERS' trade dress became famous.

68.

Defendants' use of HOOTERS' famous trade dress causes dilution by lessening the capacity of HOOTERS' trade dress to identify and distinguish its goods or services.

69.

HOOTERS is informed and believes, and based on that information and belief alleges, that Defendants with actual knowledge of the public's identification of HOOTERS' trade dress with HOOTERS and its goods and services, intentionally began use of HOOTERS' famous trade dress.

70.

By its wrongful acts, Defendants have caused and, unless restrained by this court, will continue to cause serious dilution and damage to HOOTERS trade dress and to the good will associated with its famous trade dress at issue in this district and elsewhere in an amount to be determined at trial. Such acts of Defendants have caused and will continue to cause irreparable injury to the public as well. HOOTERS has no adequate remedy at law.

**WHEREFORE**, HI LIMITED PARTNERSHIP and HOOTERS OF AMERICA, INC. respectfully pray and demand the following relief be granted under Count II of the Complaint:

1.     That Defendants, their officers, agents, co-conspirators, servants, affiliates, employees, parent and subsidiary corporations, attorneys, and representatives, and all those in privity or acting in concert with defendants, and each and all of them, be permanently enjoined and restrained from directly or indirectly:

(a)     Using trade dress in connection with the advertisement, promotion, offering or rendering of restaurant services that imitate or simulate HOOTERS' trade dress;

(b)     Performing any actions or using any trade dress, styles, titles, or designs that causes the lessening of the capacity of HOOTERS trade dress to identify and distinguish HOOTERS' goods and services;

(c)     Using any trade dress or engaging in any other conduct that dilutes HOOTERS' distinctive trade dress and the good will associated therewith;

(d)     Using any trade practices whatsoever, including those complained of in this complaint, that tend to unfairly compete with or injure HOOTERS, its business, and the good will appertaining thereto;

2.     That due to Defendants willful intent to trade on the good will associated with HOOTERS trade dress, that Defendants be required to pay to HOOTERS compensatory damages in an amount to be determined at trial for the injuries sustained by HOOTERS in consequence of the acts here complained of according to such proof as HOOTERS shall produce at the trial of this action; and that such damages be trebled because of the willful acts described herein in disregard of HOOTERS' known rights;

3.     That due to Defendants willful intent to trade on the good will associated with HOOTERS trade dress, Defendants be required to account to HOOTERS for any and all gains, profits and advantages derived by them from the activities complained of in this complaint and that such damages be trebled because of the willful acts described herein in disregard of HOOTERS' known rights;

Case 6:03-cv-00116-ACC-JGG Document 50 Filed 09/11/03 Page 26 of 33 PageID 379

4.      That due to Defendants willful intent to trade on the good will associated with HOOTERS trade dress, Defendants be required to pay to HOOTERS all of its litigation expenses, including reasonable attorney fees and the costs of this action;

5.      That due to Defendants willful intent to trade on the good will associated with HOOTERS trade dress, that this Court order any Defendants' use of HOOTERS' trade dress or combination thereof, designation(s), description(s), or representation(s) that are the subject of the violation of HOOTERS' rights, or any reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, matrices, and other means of making the same, shall be delivered up and destroyed pursuant to Section 1118 of the Lanham Act; and

6.      That HOOTERS have such other and further relief as the court may deem just and proper

## COUNT III – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA")

71.

HOOTERS realleges and incorporates by reference the allegation of Paragraphs 1 through 45, inclusive, and the acts of the defendants asserted in those paragraphs, as if here set forth in full as part of this Count III.

72.

As set forth in the preceding paragraphs of this Complaint, defendants have committed unfair or deceptive acts or practices involving trade or commerce pursuant to Fla. Stat. § 501.204, thus constituting a violation of the Florida Deceptive and Unfair

Trade Practices Act. Defendants are engaged in "trade or commerce" as defined in Fla. Stat. § 501.203(8).

73.

By its wrongful acts, Defendants have caused and, unless restrained by this court, will continue to cause serious irreparable injury and damage to HOOTERS and to the good will associated with trade dress at issue in this district and elsewhere in an amount to be determined at trial. Such acts of Defendants have caused and will continue to cause irreparable injury to the public as well. HOOTERS has no adequate remedy at law.

**WHEREFORE**, HI LIMITED PARTNERSHIP and HOOTERS OF AMERICA, INC. respectfully pray and demand the following relief be granted under Count III of the Complaint:

1.      That Defendants, their officers, agents, co-conspirators, servants, affiliates, employees, parent and subsidiary corporations, attorneys, and representatives, and all those in privity or acting in concert with defendants, and each and all of them, be permanently enjoined and restrained from directly or indirectly:

(a)      Using trade dress in connection with the advertisement, promotion, offering or rendering of restaurant services that imitate or simulate HOOTERS' trade dress;

(b)      Performing any actions or using any trade dress, styles, titles, or designs that are likely to cause confusion or mistake, or to deceive; or to otherwise mislead the trade or public into believing that HOOTERS and defendants are one and the same or in some way connected; or that HOOTERS is a

sponsor of defendants; or that defendants are in some manner affiliated or associated with or under the supervision or control of HOOTERS; or that the goods of defendants originate with HOOTERS; or are likely in any way to lead the trade or the public to associate defendants with HOOTERS;

(c)     Using any trade dress or engaging in any other conduct that creates a likelihood of injury to the distinctiveness of the goods and services offered by HOOTERS and its ability to distinguish itself in the marketplace or a likelihood of misappropriation of HOOTERS' distinctive trade dress and the good will associated therewith;

(d)     Using any trade practices whatsoever, including those complained of in this complaint, that tend to unfairly compete with or injure HOOTERS, its business, and the good will appertaining thereto;

2.     That Defendants be required to pay to HOOTERS compensatory damages in an amount to be determined at trial for the injuries sustained by HOOTERS in consequence of the acts here complained of according to such proof as HOOTERS shall produce at the trial of this action;

3.     That Defendants be required to pay to HOOTERS all of its litigation expenses, including reasonable attorney fees and the costs of this action; and

4.     That HOOTERS have such other and further relief as the court may deem just and proper.

## COUNT IV – COMMON LAW UNFAIR COMPETITION

74.

HOOTERS realleges and incorporates by reference the allegation of Paragraphs 1 through 45, inclusive, and the acts of the defendants asserted in those paragraphs, as if here set forth in full as part of this Count IV.

75.

HOOTERS' adoption and use of its distinctive trade dress and to identify its goods and services as described previously in this Complaint has established substantial good will and positive business reputation for its restaurants in the State of Florida and within this district due to HOOTERS' ability to distinguish itself in the marketplace.

76.

HOOTERS' trade dress, as described previously in this Complaint is inherently distinctive and has acquired secondary meaning.

77.

Defendants are unfairly competing with HOOTERS by adopting the infringing trade dress to identify its goods and services, the intent and result of which has been, and continues to be, a palming off of Defendants' goods and services as emanating from or being endorsed by HOOTERS, causing confusion, mistake, or deception among the public as to the source or origin of such goods and services.

78.

Defendants' use of infringing trade dress has caused and, unless restrained, will continue to cause injury to the distinctive quality of HOOTERS' trade dress and its

corresponding ability to distinguish itself in the marketplace, thus constituting common law unfair competition.

79.

By its wrongful acts, Defendants have caused and, unless restrained by this court, will continue to cause serious irreparable injury and damage to HOOTERS and to the good will associated with trade dress at issue in this district and elsewhere in an amount to be determined at trial. Such acts of Defendants have caused and will continue to cause irreparable injury to the public as well. HOOTERS has no adequate remedy at law.

**WHEREFORE** HI LIMITED PARTNERSHIP and HOOTERS OF AMERICA, INC. respectfully pray and demand the following relief be granted:

1.     That Defendants, their officers, agents, co-conspirators, servants, affiliates, employees, parent and subsidiary corporations, attorneys, and representatives, and all those in privity or acting in concert with defendants, and each and all of them, be permanently enjoined and restrained from directly or indirectly:

(a)     Using trade dress in connection with the advertisement, promotion, offering or rendering of restaurant services that imitate or simulate HOOTERS' trade dress;

(b)     Performing any actions or using any trade dress, styles, titles, or designs that are likely to cause confusion or mistake, or to deceive; or to otherwise mislead the trade or public into believing that HOOTERS and defendants are one and the same or in some way connected; or that HOOTERS is a sponsor of defendants; or that defendants are in some manner affiliated or

associated with or under the supervision or control of HOOTERS; or that the goods of defendants originate with HOOTERS; or are likely in any way to lead the trade or the public to associate defendants with HOOTERS;

(c)   Using any trade dress or engaging in any other conduct that creates a likelihood of injury to the distinctiveness of the goods and services offered by HOOTERS and its ability to distinguish itself in the marketplace of HOOTERS or a likelihood of misappropriation of HOOTERS' distinctive trade dress and the good will associated therewith;

(d)   Using any trade practices whatsoever, including those complained of in this complaint, that tend to unfairly compete with or injure HOOTERS, its business, and the good will appertaining thereto;

2.   That Defendants be required to pay to HOOTERS compensatory damages in an amount to be determined at trial for the injuries sustained by HOOTERS in consequence of the acts here complained of according to such proof as HOOTERS shall produce at the trial of this action;

3.   That Defendants be required to pay to HOOTERS all of its litigation expenses, including reasonable attorney fees and the costs of this action; and

4.   That HOOTERS have such other and further relief as the court may deem just and proper.

## JURY TRIAL DEMANDED

HI LIMITED PARTNERSHIP and HOOTERS OF AMERICA, INC. respectfully

demand it be given a trial by jury on all counts stated herein.

This 9th day of Sept, 2003.

Respectfully submitted,

Robin Uricchio Byrd, Esq.
Florida Bar No. 801534
HOLLAND & KNIGHT LLP
200 South Orange Ave., Suite 2600
P.O. Box 1526 (32802)
Orlando, Florida 32801
Tel: 407-425-8500
Fax: 407-244-5288

Steven G. Hill, Esq.
Georgia Bar No. 354658
*Admitted Pro Hac Vice*
Peter F. Schoenthaler, Esq.
Georgia Bar No. 629789
*Admitted Pro Hac Vice*
Hill, Kertscher & Pixley LLP
3350 Riverwood Parkway, Ste. 800
Atlanta, Georgia 30339
Tel: 770-953-0995
Fax: 770-953-1358

Attorneys for Plaintiffs HI LIMITED
PARTNERSHIP and HOOTERS OF AMERICA,
INC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this ___9___ day of ~~August~~ Sept, 2003, I have served opposing counsel for Defendant Winghouse of Florida, Inc., Winghouse of Kissimmee, Inc., Ker, Inc., Winghouse of Orlando, Inc., Winghouse IX, Inc., Winghouse XI, LLC and Winghouse XII, LLC with a copy of the above, PLAINTIFFS' THIRD AMENDED COMPLAINT via U.S. mail and facsimile, addressed to Richard G. Salazar, Esq., Fowler, White, Boggs, Banker, P.A., Suite 1700,. P.O. Box 1438, Tampa, Florida 33601-1438.

Robin Uricchio Byrd