

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

HI LIMITED PARTNERSHIP, a Florida
Limited Partnership, and HOOTERS OF
AMERICA, INC., a Georgia Corporation,

      Plaintiffs,

vs.                             **CASE NO. 6:03-CV-116-ORL-22-JGC**

WINGHOUSE OF FLORIDA, INC.,
a Florida Corporation, WINGHOUSE
OF KISSIMMEE, LLC. a Florida Limited
Liability Company, and KER, INC., a Florida
Corporation, WINGHOUSE OF ORLANDO,
INC., a Florida Corporation,
WINGHOUSE IX, INC., a Florida corporation,
WINGHOUSE XI, LLC,  a Florida Limited
Liability Company, WINGHOUSE XII, LLC,
a Florida Limited Liability Company,

      Defendants.

_____/

## DEFENDANTS, WINGHOUSE OF FLORIDA, INC., WINGHOUSE OF KISSIMMEE, LLC AND KER, INC., WINGHOUSE OF ORLANDO, INC., WINGHOUSE IX, INC., WINGHOUSE XI, LLC AND WINGHOUSE XII, LLC'S ANSWER AND AFFIRMATIVE DEFENSES AND COUNTERCLAIM

The Defendants, WINGHOUSE OF FLORIDA, INC., WINGHOUSE OF

KISSIMMEE, LLC, KER, INC., WINGHOUSE OF ORLANDO, INC., WINGHOUSE IX,

INC., WINGHOUSE XI, LLC AND WINGHOUSE XII, LLC (collectively, the

"Defendants" or "WingHouse") hereby answer the Third Amended Complaint filed by the

Plaintiffs, HI LIMITED PARTNERSHIP and HOOTERS OF AMERICA, INC., and state as

follows:

**INTRODUCTION**

1.      Admitted that the Plaintiffs seek the relief set forth in Paragraph 1.  Denied that there is any basis for such relief and deny all remaining allegations of Paragraph 1.

2.      The Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 2 of the Third Amended Complaint and on that basis deny the allegations of this paragraph.

3.      The Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 3 of the Third Amended Complaint and on that basis deny the allegations of this paragraph.

4.      Paragraph contains a statement as opposed to an allegation. Accordingly, no response is required.

5.      Admitted that the Defendant, WingHouse of Florida, Inc. is a Florida corporation with its principal place of business at 7421 Ulmerton Road, Largo, Florida 33771.  Admitted that Crawford Ker is the registered agent of WingHouse of Florida, Inc.

6.      Admitted that the Defendant, WingHouse of Kissimmee, LLC is a Florida limited liability company with its principal place of business at 7421 Ulmerton Road, Suite 104, Largo, Florida 33771.  Admitted that the Defendant, WingHouse of Kissimmee, LLC owns and operates a WingHouse restaurant located 3405 West Vine Street, Kissimmee, Florida.  Admitted that R. Alan Higbee is the registered agent of WingHouse of Kissimmee, LLC.

7.      Admitted that the Defendant, Ker, Inc. is a Florida corporation with its principal place of business at 7421 Ulmerton Road, Suite 104, Largo, Florida 33771. Admitted that Crawford Ker is the registered agent of Ker, Inc.

8.      Admitted that the Defendant, WingHouse of Orlando, Inc. is a Florida corporation with its principal place of business located at 3201 Parkway Center Court, Orlando, Florida 32308. Admitted that Crawford Ker is the registered agent of WingHouse of Orlando, Inc.

9.      Admitted that the Defendant WingHouse IX, Inc. is a Florida corporation with its principal place of business at 7421 Ulmerton Road, Largo, Florida, 33771. Admitted that R. Alan Higbee is the registered agent of Winghouse IX, Inc.

10.      Admitted that the Defendant, WingHouse XI, LLC is a Florida limited liability company with its principal place of business located at 7421 Ulmerton Road, Largo, Florida 33771. Admitted that R. Alan Higbee is the registered agent for WingHouse XI, LLC

11.      Admitted that the Defendant, WingHouse XII, LLC is Florida limited liability company with a place of business at 7421 Ulmerton Road, Largo, Florida 33771. Admitted that R. Alan Higbee is the registered agent for WingHouse XII, LLC.

## JURISDICTION AND VENUE

12.      Admitted that the Plaintiffs seek the relief set forth in Paragraph 12. Denied that there is any basis for such relief and deny all remaining allegations of Paragraph 12.

13.     Admitted for jurisdictional purposes only, otherwise denied.  Denied that the Defendants have committed any wrongful acts in the State of Florida.

14.     Admitted for jurisdictional purposes only, otherwise denied.

15.     Admitted for jurisdictional purposes only, otherwise denied.

## FACTS COMMON TO ALL COUNTS

### Plaintiffs' Business and Philosophy

16.     The Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 16 of the Third Amended Complaint and on that basis deny the allegations of this paragraph.

17.     The Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 17 of the Third Amended Complaint and on that basis deny the allegations of this paragraph.

18.     To the extent that paragraph 18 contains conclusions of law as opposed to allegations of fact, no response is required.  Admitted that "HOOTERS" restaurants are operated nationwide. Denied that the "HOOTERS" trade dress is distinctive. The Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 18 of the Third Amended Complaint and on that basis deny the remaining allegations of this paragraph.

19.     To the extent that paragraph 19 contains conclusions of law as opposed to allegations of fact, no response is required.  Admitted that "HOOTERS" restaurants have been in operation for several years. Denied that the "HOOTERS" trade dress is unique and

distinctive. Denied that HOOTERS restaurants have a unique and distinctive atmosphere and presentation. The Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 19 of the Third Amended Complaint and on that basis deny the remaining allegations of this paragraph.

### Plaintiffs' Inherently Distinctive Trade Dress

20.    Admitted that there is a HOOTERS restaurant located in Clearwater, Florida. The Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 20 of the Third Amended Complaint and on that basis deny the remaining allegations of this paragraph.

21.    Denied that the HOOTERS concept has created a unique business and has set HOOTERS apart from other restaurant establishments. The Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 21 of the Third Amended Complaint and on that basis deny the remaining allegations of this paragraph.

22.    To the extent that paragraph 22 contains conclusions of law as opposed to allegations of fact, no response is required. Denied that HOOTERS restaurants have an inherently distinctive trade dress for the presentation and sale of goods and services at HOOTERS restaurants. The Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 22 of the Third Amended Complaint and on that basis deny the remaining allegations of this paragraph.

23.     Denied that HOOTERS has an unconventional approach to the restaurant business. Denied that it is unusual and unique to use sex appeal in the dining experience. The Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 23 of the Third Amended Complaint and on that basis deny the remaining allegations of this paragraph.

24.     To the extent that paragraph 24 contains conclusions of law as opposed to allegations of fact, no response is required. Denied that HOOTERS has a distinctive trade dress. The Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 24 of the Third Amended Complaint and on that basis deny the remaining allegations of this paragraph.

25.     Denied that the environment at HOOTERS restaurants is unusual in a retail restaurant setting. The Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 25 of the Third Amended Complaint and on that basis deny the remaining allegations of this paragraph.

26.     Denied that the use of female sex appeal in the HOOTERS restaurants is unique in the industry. The Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 26 of the Third Amended Complaint and on that basis deny the remaining allegations of this paragraph.

27.     To the extent that paragraph 27 contains conclusions of law as opposed to allegations of fact, no response is required. Denied that the HOOTERS concept is unique and distinctive. Denied that there is a distinctive atmosphere associated with the HOOTERS

restaurants and trade name. The Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 27 of the Third Amended Complaint and on that basis deny the remaining allegations of this paragraph.

28.    To the extent that paragraph 28 contains conclusions of law as opposed to allegations of fact, no response is required. Denied that HOOTERS has a unique, distinctive, non-functional trade dress. Denied that the HOOTERS trade dress has secondary meaning. The Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 28 of the Third Amended Complaint and on that basis deny the remaining allegations of this paragraph.

29.    To the extent that paragraph 29 contains conclusions of law as opposed to allegations of fact, no response is required. Denied that the HOOTERS trade dress is distinctive and non-functional. Denied that HOOTERS' interior restaurant design and décor, menu, and style of service are source-distinguishing elements that comprise a protectable trade dress. Denied that HOOTERS restaurants have acquired a valuable commercial magnetism, a distinctiveness and secondary meaning. The Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 29 of the Third Amended Complaint and on that basis deny the remaining allegations of this paragraph.

30.    Admitted that the Defendants, WINGHOUSE OF FLORIDA, INC. and KER, INC. license certain intellectual property rights to WingHouse restaurants. The remaining allegations in paragraph 30 are denied.

31.     Admitted that the first WingHouse restaurant in Largo, Florida was opened in 1994. Admitted that additional WingHouse restaurants have been opened since that time. The remaining allegations in paragraph 31 are denied.

32.     Admitted that there are twelve (12) WingHouse locations located in the State of Florida. The remaining allegations in paragraph 32 are denied.

33.     Admitted that the Defendant WingHouse of Kissimmee, LLC owns a restaurant located at 3405 W. Vine Street, Kissimmee, Florida 34741.

34.     Admitted that the Defendant WingHouse of Orlando, Inc. owns a restaurant located at 3201 Parkway Center Court, Orlando, Florida 32808.

35.     Admitted that the Defendant WingHouse IX, Inc. owns a restaurant located at 227 South Semoran Blvd., Winter Park, Florida 32792.

36.     Admitted that the Defendant WingHouse XI, LLC owns a restaurant located at 2721 West International Speedway Blvd., Daytona Beach, Florida 32114.

37.     Admitted that the Defendant WingHouse XII, LLC owns a restaurant located at 245 West State Road 436, Altamonte Springs, Florida, 32714.

## Trade Dress Infringement by Defendants.

38.     Denied.

39.     Admitted that WingHouse restaurants and HOOTERS restaurants compete in the State of Florida. The remaining allegations in Paragraph 39 are denied.

40.     Denied.

41.     Denied.

42.     Admitted that WingHouse restaurants and HOOTERS restaurants compete in the State of Florida.  The remaining allegations in paragraph 42 are denied.

43.     Denied.

44.     Denied.

45.     Admitted that the servers at WingHouse restaurants are referred to as "WingHouse Girls".  Admitted that there is a "WingHouse Girl" of the month and that WingHouse restaurants offer calendars for sale that contain photographs of "WingHouse Girls".  The remaining allegations in paragraph 45 are denied.

## Customer and Other Confusion

46.     Denied that the Defendants have engaged in any wrongful acts or trade dress infringement. The Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 46 of the Third Amended Complaint and on that basis deny the remaining allegations of this paragraph.

## COUNT I -- FALSE REPRESENTATIONS AND FALSE DESIGNATION OF ORIGIN 15 U.S.C. SECTION 1125(a) (TRADE DRESS INFRINGEMENT)

47.     The Defendants incorporate by reference their answers to Paragraphs 1 through 46 inclusive of the Third Amended Complaint as if set forth fully herein.

48.     Denied.

49.     Denied that the HOOTERS trade dress is distinctive and non-functional. Denied that the HOOTERS trade dress has acquired secondary meaning.  Admitted that WingHouse restaurants are advertised and promoted in the same channels of trade as HOOTERS restaurants. The remaining allegations in paragraph 49 are denied.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Denied.

54.     Denied.

55.     Denied.

56.     Denied.

57.     Denied.

58.     Denied.

59.     Denied.

60.     Denied.

61.     Denied.

All allegations not specifically admitted are specifically denied.

### COUNT II -- DILUTION OF FAMOUS MARKS 15 U.S.C. 1125(a) (TRADE DRESS DILUTION)

62.     The Defendants incorporate by reference their answers to Paragraphs 1 through 46 inclusive of the Third Amended Complaint as if set forth fully herein.

63.     Denied.

64.     Denied.

65.     Denied.

66.     Denied.

67.     Denied.

**10**

68. Denied.

69. Denied.

70. Denied.

All allegations not specifically admitted are specifically denied.

## COUNT III -- VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA")

71. The Defendants incorporate by reference their answers to Paragraphs 1 through 45 inclusive of the Third Amended Complaint as if set forth fully herein.

72. Admitted that the Defendants are engaged in trade or commerce as defined in Fla. Stat. Section 501.203(8). The remaining allegations in paragraph 72 are denied.

73. Denied.

All allegations not specifically admitted are specifically denied.

## COUNT IV -- COMMON LAW UNFAIR COMPETITION

74. The Defendants incorporate by reference their answers to Paragraphs 1 through 45 inclusive of the Third Amended Complaint as if set forth fully herein.

75. Denied.

76. Denied.

77. Denied.

78. Denied.

79. Denied.

All allegations not specifically admitted herein are denied.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

The Plaintiffs' claims are barred, in whole or in part, by the statute of limitations.

## SECOND AFFIRMATIVE DEFENSE

The Plaintiffs' claims are barred, in whole or in part, by the doctrine of accord and satisfaction. The Plaintiffs, through their predecessor in interest, entered into an agreement to resolve any and all disputes regarding the appearance of and style of service utilized by the WingHouse restaurants and such agreement has been fully performed by the WingHouse restaurants.

## THIRD AFFIRMATIVE DEFENSE

The Plaintiffs' Third Amended Complaint, and each Count thereof, fails to state a claim upon which relief may be granted.

## FOURTH AFFIRMATIVE DEFENSE

The Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches. The Plaintiffs, directly and through their predecessor in interest, have had actual knowledge of the WingHouse restaurants, including but not limited to their menus, interior décor, wait staff and style of service since the first WingHouse restaurant was opened in 1994 and have allowed WingHouse to conduct and expand its business since that time. Moreover, the Plaintiffs, through their predecessor in interest, entered into an agreement to resolve any and all disputes regarding the appearance of and style of service utilized by the WingHouse restaurants and such agreement has been fully performed by the WingHouse restaurants. To

permit Plaintiffs to enforce any alleged trade dress rights after WingHouse restaurants have been conducting and expanding their business for nine (9) years would prejudice the Defendants and the Plaintiffs have no justification for the delay in enforcing any alleged rights.

## FIFTH AFFIRMATIVE DEFENSE

The Plaintiffs' claims are barred, in whole or in part, by the doctrine of acquiescence. The Plaintiffs, directly and through their predecessor in interest, have had actual knowledge of the WingHouse restaurants, including but not limited to their menus, interior décor, wait staff and style of service since the first WingHouse restaurant was opened in 1994 and have allowed WingHouse to conduct and expand its business since that time. Moreover, the Plaintiffs, through their predecessor in interest, entered into an agreement to resolve any and all disputes regarding the appearance of and style of service utilized by the WingHouse restaurants and such agreement has been fully performed by the WingHouse restaurants. To permit Plaintiffs to enforce any alleged trade dress rights after WingHouse restaurants have been conducting and expanding their business for nine (9) years would prejudice the Defendants and the Plaintiffs have no justification for this delay in enforcing any alleged rights.

## SIXTH AFFIRMATIVE DEFENSE

The Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel. The Plaintiffs, directly and through their predecessor in interest, have had actual knowledge of the WingHouse restaurants, including but not limited to their menus, interior décor, wait staff and style of service since the first WingHouse restaurant was opened in 1994 and have allowed WingHouse to conduct and expand its business since that time. Moreover, the Plaintiffs, through their predecessor in interest, entered into an agreement to resolve any and all disputes regarding the appearance of and style of service utilized by the WingHouse restaurants, such agreement has been fully performed, the WingHouse restaurants relied upon the agreement, and to permit enforcement of the Plaintiffs' alleged trade dress rights in contravention of such agreement would prejudice the Defendants.

## SEVENTH AFFIRMATIVE DEFENSE

The Plaintiffs' claims are barred, in whole or in part, by the doctrine of waiver. The Plaintiffs, directly and through their predecessor in interest, have had actual knowledge of the WingHouse restaurants, including but not limited to their menus, interior décor, wait staff and style of service since the first WingHouse restaurant was opened in 1994 and have allowed WingHouse to conduct and expand its business since that time resulting in a waiver of the Plaintiffs rights to enforce any alleged trade dress rights as set forth in the Third Amended Complaint. Moreover, the Plaintiffs, through their predecessor in interest, entered into an agreement to resolve any and all disputes regarding the appearance of and style of service utilized by the WingHouse restaurants and such agreement has been fully performed and relied upon by the WingHouse restaurants. Having settled with the WingHouse restaurants regarding

**14**

the very same conduct that is the subject of the instance litigation, the Plaintiffs have waived and abandoned their rights to bring an infringement action.

### EIGHTH AFFIRMATIVE DEFENSE

The Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands. The Plaintiffs, through their predecessor in interest, entered into an agreement to resolve any and all disputes regarding the appearance of and style of service utilized by the WingHouse restaurants and such agreement has been fully performed and relied upon by the WingHouse restaurants. The Plaintiffs claims, as alleged in the Third Amended Complaint, are based on the actions of the WingHouse restaurants that were approved and accepted by Plaintiffs, through their predecessor in interest.

### NINTH AFFIRMATIVE DEFENSE

The actions of the Defendants constitute lawful competition.

### TENTH AFFIRMATIVE DEFENSE

The Plaintiffs' alleged trade dress is functional and therefore is not capable of protection under the Lanham Act or common law.

### ELEVENTH AFFIRMATIVE DEFENSE

The Defendants were authorized by the Plaintiffs, or their predecessors in interest, to operate their restaurants in the manner set forth in the Third Amended Complaint and thus were acting under that authority and the express or implied consent or license of the Plaintiffs.

### TWELFTH AFFIRMATIVE DEFENSE

The Defendants deny that there has been any infringement of the alleged trade dress of the Plaintiffs. In the unlikely event that the Plaintiffs can prove their trade dress

infringement allegations, such infringement was not as a result of any intentional conduct on the part of the Defendants.

## THIRTEENTH AFFIRMATIVE DEFENSE

The Defendants claims are barred, in whole or in part, by settlement and release. The Defendants state that any dispute between the Plaintiffs and the Defendants was resolved pursuant to a prior settlement with the Plaintiffs' predecessor in interest. The Plaintiffs, through their predecessor in interest, entered into an agreement to resolve any and all disputes regarding the appearance of and style of service utilized by the WingHouse restaurants and such agreement has been fully performed and relied upon by the WingHouse restaurants.

## FOURTEENTH AFFIRMATIVE DEFENSE

The Plaintiffs have failed to mitigate their damages.

## FIFTEENTH AFFIRMATIVE DEFENSE

The Plaintiff's alleged trade dress is not famous and, therefore, is not subject to dilution under the Lanham Act.

The Defendants reserve the right to assert any additional affirmative defenses that discovery and further investigation of Plaintiffs' claims reveal are available.

WHEREFORE, the Defendants, WINGHOUSE OF FLORIDA, INC., WINGHOUSE OF KISSIMMEE, LLC, KER, INC., WINGHOUSE OF ORLANDO, INC., WINGHOUSE IX, INC., WINGHOUSE XI, LLC and WINGHOUSE XII, LLC, pray that this Court enter judgment in favor of the Defendants and award Defendants their attorneys fees pursuant to Fla. Stat. Section 501.2105, costs, expenses, and other relief as this court deems just.

## COUNTERCLAIM

The Counterclaimant, KER, INC. , by and through its undersigned trial counsel, sues the Counterclaim Defendants, HI LIMITED PARTNERSHIP and HOOTERS OF AMERICA, INC. (collectively, "the Counterclaim Defendants"), and alleges:

### PARTIES

1.      Ker, Inc. is a corporation organized and existing under the laws of Florida and has its principal place of business at Largo, Pinellas County, Florida.

2.      HI Limited Partnership ("HLP") is a limited partnership organized and existing under the laws of the state of Florida with its principal place of business in Atlanta, Georgia.

3.      Hooters of America, Inc. ("HOA") is a corporation organized and existing under the laws of the state of Georgia with its principal place of business in Atlanta, Georgia.

### NON-PARTIES

4.      Hooters, Inc. ("Hooters") is a corporation organized and existing under the laws of the state of Florida with its principal place of business in Clearwater, Florida.

### JURISDICTION AND VENUE

5.      This is an action for damages in excess of $75,000, exclusive of interest, costs, and attorneys' fees. This Court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1367(a).

### GENERAL ALLEGATIONS

6.      Crawford Ker, the owner of Ker, Inc., played professional football from 1985 to 1991. From 1985 to 1990, Mr. Ker played for the Dallas Cowboys of the National Football League ("NFL"). In 1991, Mr. Ker played for the NFL's Denver Broncos. After the 1993 NFL football

season, Mr. Ker retired from professional football.

7.      Seeking to capitalize on his name recognition as a local athlete and former professional football player, in 1994, Mr. Ker opened a sports bar located at 7369 Ulmerton Road in Largo, Florida. Mr. Ker named his sports bar "Ker's WingHouse".  WingHouse offers to its customers typical sports bar food, including chicken wings, hamburgers and sandwiches as well as beer and liquor.  Since Ker's WingHouse was a sports bar, Mr. Ker installed televisions through the bar for the viewing of sporting events.  Ker's WingHouse utilized wooden tables and chairs and photographs of professional athletes and others.

8.      "Ker's WingHouse" sports bar enjoyed early success.  Based on its success, in 1995, Mr. Ker opened a second "Ker's WingHouse" in Pinellas Park, Florida and, in 1996, a third "Ker's WingHouse" in Tampa, Florida.

9.      At the inception of the Ker's WingHouse restaurants, the uniforms worn by the WingHouse waitstaff consisted of a white tank top shirt bearing the name "Ker's WingHouse" and a design mark and red "dolfin" shorts also bearing the name "Ker's WingHouse" and a design mark.

10.     One or both of the Counterclaim Defendants are and all times material to the allegations of this Counterclaim have been, engaged in the business of owning and/or operating certain dining establishments under the name and mark "HOOTER'S".

11.     On or about September 23, 1997, representatives of Hooters, Inc. contacted Mr. Ker, and requested a meeting to discuss Hooters' objections to (i) the similarities between the trade dress of the "HOOTER'S" restaurants and the "KER'S WINGHOUSE" sports bars and (ii) other marketing practices promoting the WingHouse sports bars.

12.    Subsequent to the receipt of the September 23, 1997 letter, Mr. Ker met with the principals of Hooters at their offices in Clearwater, Florida. At this meeting, Mr. Ker agreed to meet with Dennis Johnson, one of the owners of Hooters, Inc. to discuss possible modifications to the WingHouse restaurants which would satisfy objections to the so-called similarities contained in the "trade dress" utilized by WingHouse and avoid future litigation.

13.    In a subsequent meeting held at the WingHouse sports bar in Pinellas Park, Mr. Johnson represented to Mr. Ker that, if he were to change the color of the uniforms worn by the WingHouse's waitstaff to black tank tops and black shorts, this would resolve any remaining objections regarding the trade dress utilized in the WingHouse restaurants. In reliance upon the agreement and understanding reached by and between Mr. Ker and Mr. Johnson, new uniforms were purchased for the waitstaff employed at all WingHouse sports bars. The new uniforms consisted of a black tank top bearing the mark "KER'S WINGHHOUSE & DESIGN" and black Dolfin shorts bearing the mark "KER'S WINGHOUSE AND DESIGN".

14.    On information and belief at all times, Mr. Johnson and the other representatives of Hooters, Inc. were acting on behalf of not only Hooter's Inc., but also any entities which would have derived any rights in the Hooter's trade dress from Hooter's Inc., which would include the Counterclaim Defendants.

15.    Subsequent to the formation of this agreement and in reliance that an agreement had been reached and that any remaining trade dress issues involving "Hooters" had been resolved, Mr. Ker continued to open new WingHouse sports bars throughout Central Florida. As of December of 2002, Mr. Ker had opened a total of ten (10) WingHouse sports bars in Central Florida. Mr. Ker opened an additional two (2) WingHouse sports bars in 2003.

19

16.     Notwithstanding the binding agreement and understanding reached with in 1997, in January of 2003, the Counterclaim Defendants instituted legal action against Ker, Inc. and related entities in the United States District Court for the Middle District of Florida for trade dress infringement. The gravamen of the claims against Ker, Inc. and the other entities include the same issues which were resolved pursuant to the agreement and understanding reached in 1997.

17.     As a direct and proximate result of the above-alleged acts and conduct of the Counterclaim Defendants, Ker, Inc. has been damaged in an amount equal to, at a minimum, the attorneys fees and costs it has incurred to defend against the claims brought by the Counterclaim Defendants in this action.

18.     By reason of the wrongful acts and conduct of the Counterclaim Defendants alleged herein, the Counterclaimant Ker, Inc. has been required to retain the services of its undersigned trial counsel for the purpose of bringing this action, and Ker, Inc., has obligated itself to pay a reasonable fee for their services.

19.     All conditions precedent to the maintenance of this action have occurred or have been performed or fulfilled.

## FIRST CLAIM FOR RELIEF

20.     The Counterclaimant Ker, Inc. realleges and incorporates by reference the allegation of Paragraph 1 through 19 above.

21.     By reason of the acts and conduct alleged, the Counterclaim Defendants have breached the terms and conditions of the settlement agreement by suing Ker Inc. and entities who obtain their intellectual property rights from Ker, Inc.

22.     As a direct and proximate result of the breach, the Counterclaimant has suffered damages.

WHEREFORE, the Counterclaimant, KER, INC., hereby demands:

(a)     That a final judgment for compensatory damages be entered in its favor and against HI Limited Partnership and Hooters of America, Inc.;

(b)     That this Court award Ker, Inc. its costs and disbursements, including a reasonable attorney's fee, in connection with the prosecution of this action; and

(c)     That this court award to Ker, Inc. such other and further relief as it deems appropriate.

DATED this _5th_ day of November, 2003.

Respectfully Submitted,

_Richard G. Salazar_

G. Donovan Conwell, Jr.,
Florida. Bar No. 371319
Richard G. Salazar,
Florida. Bar No. 899615
G. Wrede Kirkpatrick,
Florida. Bar No. 984116
Suzanne R. Eschrich,
Florida. Bar No. 0166626
FOWLER WHITE BOGGS BANKER P.A.
P.O. Box 143 Tampa, FL  33601
(813) 228-7411 - Telephone
(813) 229-8313 – Facsimile
Trial Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served this 5th day of November, 2003 upon the following:

By United States Mail to:

Robin Uricchio Byrd
**HOLLAND & KNIGHT, LLP**
200 South Orange Avenue, Suite 2600
Orlando, Florida 32801


Steven G. Hill
Peter F. Schoenthaler
HILL, KERTSCHER & PIXLEY, LLP
3350 Riverwood Parkway
Suite 800
Atlanta, Georgia 30339

_Richard D. Salazar_
Attorney